UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 4:20 MJ 7180 SPM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL AVERY, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S MOTION FOR LEAVE TO SUPPLEMENT PRETRIAL SERVICES REPORT AND TO RECONSIDER ORDER DENYING
<u>MOTION FOR PRETRIAL DETENTION</u>**

COMES NOW the United States of America by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Michael A. Reilly, Assistant United States Attorney for said District, and for its Motion for Leave to Supplement Pretrial Services Report and to Reconsider Order Denying Motion For Pretrial Detention, states as follows:

**I.   INTRODUCTION AND PROCEDURAL HISTORY**

On May 31, 2020, the United States charged Defendant by complaint with rioting in violation of 18 U.S.C. § 2101 [Doc. # 1-2, incorporated herein by reference].  On that same date, the United States filed its Motion for Pretrial Detention and Hearing [Doc. # 4].  On May 31, 2020, at approximately 12:45 p.m., FBI agents arrested Defendant.  On June 3, 2020, the Court conducted a detention hearing [Doc. # 8-10].  On June 8, 2020, Defendant filed his Response to Pretrial Services Report, supported with numerous letters [Doc. # 22, 14-18, 24].

On June 10, 2020, the United States attempted to file a Reply to Defendant Avery's Response.  The United States attempted to file its Reply with attachments during the afternoon

1

hours of June 10, 2020.  The United States, via CM-ECF was unable to link its Reply to Defendant's Response, Doc. # 22, and sought direction from the Office of the Clerk of the Court. The United States believed the pleading would be filed yesterday.  Due to technical considerations, the Reply was not filed.  In the interim, the Court issued its Order denying the Motion for Pretrial Detention [Docs. # 4, 25].

The United States now moves for leave to supplement information relative to factors in the Pretrial Services Report, and for the Court to reconsider its Order denying the Motion for Pretrial Detention.[1]

The pretrial services report, the complaint affidavit, and the surrounding circumstances detailed herein establish by more than a preponderance of the evidence that Defendant is a flight risk, and by more than clear and convincing evidence that Defendant presents a danger to the community.  Defendant's Facebook posts, detailed in the complaint affidavit, were followed by a tidal wave of tragic violence, shootings, and other crimes including burglary and property damage.  Neither Defendant's legal arguments nor proffered letters negate the plain language he used on Facebook "CALLING OUT ALL THE SHOOTERS," and encouraging others to "SHARE, SHARE, SHARE," his call to action.  On May 30, 2020, Defendant, while en route to St. Louis from Minnesota, also explained "STL WE ON WAY THE BUT REAL QUICK I WANT TO SHARE WITH YOU EXACTLY HOW THE YOUNG PPL OF MN ORGANIZED THEY LOOTING." Defendant provided explicit descriptions of the means and methods of

---

[1] This afternoon, the substance of this information was provided via email to Pretrial Services and Counsel for Defendant in the form of the pleading the United States attempted to file yesterday.  The information contained in the proffered pleading is substantially similar to this pleading.

2

looting, and then encouraged his audience, "LET'S DO THIS FOR EVERY LOST SOUL THAT HAS BEEN TAKEN FROM US …"

On May 30, 2020, Defendant encouraged men in St. Louis to stand up and "get to Ferguson pd right now." Shortly thereafter, Defendant posted, "RED ALERT EVERYONE GET TO FERGUSON PD RIGHT NOW." What began as a peaceful protest devolved into violence and property damage. Individuals threw rocks and bottles at police, and smashed windows at the Ferguson Police Department and at least one local business. Several officers were injured. Officers also reported a significant amount of gunfire.

Defendant also singled out the St. Louis Metropolitan Police Department (SLMPD) Bike Patrol, a unit that approximately two days later was ambushed with sustained organized gunfire. SWAT teams were required to extricate the officers who were pinned down. In roughly that same time period, retired SLMPD Captain David Dorn was murdered, shot to death, when he interrupted looting/burglary/robbery at Lee's Pawn and Jewelry in the 4100 block of Dr. Martin Luther King Drive within St. Louis City. Four SLMPD officers were shot in the vicinity of 17th Street and Olive, near SLMPD Headquarters. A 7-11 store at 17th Street and Olive, not far from SLMPD Headquarters, was looted and burned. Well over fifty businesses in the St. Louis area were "looted," burglarized, and sustained varying degrees of damage.

Defendant, who called for shooters and lootings, and on May 31, posted "…off the pigs," presents an overwhelming danger to the community.

## II. PRETRIAL RELEASE UNDER THE BAIL REFORM ACT

The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. A defendant may be detained pending trial only if a "judicial officer finds that no condition or combination of conditions will reasonably assure the

3

appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). To make such a finding, the judicial officer must hold a detention hearing per 18 U.S.C. § 3142(f).

The factors relevant to considering whether there are release conditions that can ensure the Defendant's appearance and the safety of the community are: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant would pose to any person or the community if released. *Id.* § 3142(g); see *United States v. Abad,* 350 F.3d 793, 797 (8th Cir. 2003), citing 18 U.S.C. § 3142(g).

When claiming that a pretrial defendant poses a flight risk, the government's evidentiary burden is preponderance of the evidence. 18 U.S.C. § 3142(f); *United States v. Orta*, 760 F.2d 887, 891 n. 20 (8th Cir. 1985) (en banc). A determination that a defendant poses a safety risk must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). It is sufficient for a defendant either to be found a risk of danger to the safety of the community or a flight risk to authorize detention. *United States v. Cantu*, 935 F.2d 950-52 (8th Cir. 1991). See also *United States v. Kisling,* 334 F.3d 734, 735 (8th Cir. 2003) (quoting *United States v. Orta,* 760 F.2d 887, 891 (8th Cir.1985) (en banc); 18 U.S.C. § 3142(c), (e)-(f).

### III. ANALYSIS

#### A.  The Nature and Circumstances of the Offense

The nature and circumstances surrounding the rioting charge weigh heavily in favor of detention. The complaint affidavit provides an evidentiary basis to conclude that Defendant urged and instigated others to riot. Defendant called out shooters, not protesters. Defendant also

4

educated, instructed and encouraged looters.  As such, Defendant incited, organized, promoted, and encouraged rioting in violation of 18 U.S.C. § 2101.  What followed was an extreme level of violence and property damage in the St. Louis area.

During the evening of May 30 and the early morning of May 31, 2020, there was violence and property damage in Ferguson.  The violence included "a significant amount of gunfire," injury to police officers, and damage to the Ferguson Police Department [See Attachment 1].  Officers were injured by rocks, bottles, and fireworks.  Mayor James W. Knowles, III extended a curfew order [See Attachment 2].

On June 2, 2020, St. Louis Mayor Lyda Krewson issued Executive Order 66, acknowledged an emergency, and imposed a curfew in St. Louis to prevent further rioting [See Attachment 3].  Mayor Krewson noted the widespread criminal behavior including assault upon person with deadly weapons and widespread intentional damage to the property of others.  This followed, among other things, the murder of retired Captain Dorn, the shooting of four SLMPD officers, the attack on the SLMPD bike patrol, and widespread looting and property damage.  18 U.S.C. § 2101 provides as follows:

> Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent
>
>> (1) to incite a riot; or
>> (2) to organize, promote, encourage, participate in, or carry on a riot; or
>> (3) to commit any act of violence in furtherance of a riot; or
>> (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;
>
> and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph . . . [s]hall be fined . . . or imprisoned not more than five years, or both.

18 U.S.C. § 2101(a) defines "riot" as a "public disturbance involving:

(1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or

(2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

18 U.S.C. § 2102(b) states that "to incite a riot" or "to organize, promote, encourage, participate in, or carry on a riot" "includes, but is not limited to:

urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

Defendant's conduct includes that he used his Facebook account to urge and instigate others to riot. As such, Defendant instigated, organized, promoted, and encouraged dangerous rioting in the St. Louis area. The weight of this factor alone is sufficient to detain Defendant.

### B.  The Weight of the Evidence

The evidence is strong, and weighs heavily in favor of detention. Defendant's Facebook posts are direct, encouraging shooting, looting, and violence to police. Widespread shootings, including the murder of retired SLMPD Captain David Dorn, assault, including the shooting of four SLMPD officers, burglary, robbery and property damage followed.

The Court should reject Defendant's contention that "Shooters" is a slang term for men to come out and protest instead of women [Defendant's Response, at 3]. Defendant stated, "PLS SHARE THIS POST WIDELY, CALLING OUT ALL THE SHOOTERS, ALL THE PEOPLE

WHO DON'T GIVE AF." Defendant's choice of words is quite clear. He did not call for concerned citizens or peaceful protesters, he called for shooters. On May 31, 2020., at 8:42 a.m., hours before his arrest, Defendant posted, "No more pigs in our communities off the pigs." This is consistent with Defendant's call for shooters, not peaceful protesters.

Equally unavailing is Defendant's argument that a "red action," as used by Defendant, has no connotation of violence, but is merely "a descriptive word commonly used by activist to describe a protest that may subject the protesters to gas pellets, pepper spray, or rubber bullets by law enforcement. The protesters then know to wear goggles to protect their eyes, long pants and sleeves to protect their skin and to be prepared in case there are arrests." [Defendant's Response, at 3] It is reasonable to infer, particularly when Defendant calls out "shooters," that "red action," in the context used by Defendant implies that persons will engage in some type of illegal activity that will evoke a law enforcement response. The totality of Defendant's posts establish that he is calling for violence and property damage, not a peaceful protest.





**Mike Avery**
May 30 at 1:46 PM

STL WE ON THE WAY

BUT REAL QUICK I WANT TO SHARE WITH YOU EXACTLY HOW THE YOUNG PPL OF MN ORGANIZED THEY LOOTING.

NOW IDC IF YOU WITH IT OR AGAINST IT, I'M JUST ABOUT TO TELL YALL WHAT I SEEN WITH MY OWN 2 EYES.

YES BUILDINGS AND STORES WERE LOOTED WHO GIVES AF, BODIES CAN'T BE REPLACED OUR LOVE ONES CAN'T BE. ALL THAT SHIT HAS INSURANCE.

SO HOW THEY DID THIS WAS THEY ONLY ALLOWED 3 TO 4 PPL IN THE STORE TO GATHER THINGS AND THEY THREW EVERYTHING ONTO THE PARKING LOT THAT WAY PPL DIDN'T HAVE TO GO INTO THE STORES. THAN ONCE AREAS WERE FULLY TAKEN OVER BY THE PPL, THEY PUT UP TENTS AND GATHERED EVERYTHING UNDER THEM THAT WAY IF IT WAS SOMETHING YOU SAW OR NEEDED YOU COULD GRAB.

SECOND THING THEY HAD A CERTAIN COLOR SPRAY PAINT AND THEY MARKED ALL THE BLACK OWNED BUSINESSES OR BUILDINGS THAT WERE NOT TO BE TOUCHED UNDER NO CIRCUMSTANCES.

WHEN OUT, WE HAVE TO PROTECT EACH OTHER AND MORE THAN ANYTHING MEN WE HAVE TO STEP THE FUCK UP. YES OUR QUEENS ARE STRONG AND POWERFUL BUT EE HAVE TOO MANY SO CALLED TUFF GUYS IN STL FOR WOMEN TO BE THE ONES ON THE FRONT LINES.

MEN STEP THE FUCK UP, FELLOWS I NEED Y'ALL TO UNDERSTAND AND SHARE THIS WITH YOUR FRIENDS AND IM NOT SAYING PUT YOUR GUNS DOWN, JUST STOP USING THEM ON US AND EACH OTHER, LOVE YOUR BROTHER BECAUSE THE SYSTEM HATE THEFT BOTH OF YOU.

LET'S DO THIS FOR EVERY LOST SOUL THAT HAS BEEN TAKEN FROM US THE PEOPLE BRING THE MASSES OUT WE ALL FAMILY.

YOU CAN STAND FOR SOMETHING GOOD. SUPPORT SOMETHING GOOD OR STFU

32        2 Comments  21 Shares

---

**Mike Avery**
May 30 at 3:20 PM

I need first and last names of any bike cops yall remember anybody who was involved in some shit and got away with it I need names and now

4         4 Comments  2 Shares

👍 Like         ↗ Share

**Kristian Calbert** i have video of some of their badge numbers and faces i will send it to you either tonight or tomorrow
Like · 1w

**Mike Avery** Kristian Calbert I'm sorry im looking for one's in stl now in head home
Like · 1w

8





### C. Defendant's History and Characteristics

Defendant's history and characteristics, for the reasons set forth in the Pretrial Services Report support detention. The Court may consider that Defendant has been previously adjudicated of more than one felony offense, and was noncompliant on supervision.

### D. The Nature and Seriousness of the Danger to any Person or the Community

Defendant presents a serious threat to the community and to police officers if released. This factor weighs heavily in favor of detention. The danger Defendant poses is significant

9

because (1) he acts through and encourages others to commit violent acts and property damage; (2) he directed others to spread his call to "shooters;" (3) he has specifically singled out the SLMPD bike patrol officers; (4) he has specifically directed violence toward police (including "off the pigs"); and (5) there is an evidentiary basis to conclude that he believes the actions that he incites and encourages, violence and property damage, are justified. Based upon this combination of factors and the totality of the circumstances, there is a strong evidentiary basis to conclude that Defendant, if released, would present a threat to the community, including police officers.

On May 30, 2020, Defendant posted on Facebook, "I need first and last names of any bike cops yall remember anybody who was involved in some shit and got away with it I need names and now." In or about the late evening of June 1 and early morning of June 2, 2020, at or near 13th and Lucas, the SLMPD Bike Patrol and Bicycle Response Unit, was ambushed and attacked by organized, sustained gunfire from multiple directions.[2] The unit was pinned down for approximately thirty minutes. See https://www.youtube.com/watch?v=wRixngiAzFY. A SLMPD officer generally describes the ambush of the Bike Patrol/Bicycle Response Unit. More than one SWAT team was required to end this attack.

Defendant has previously interacted with members of the Bike Patrol who describe his demeanor as more aggressive and threatening than a normal protester. For example, Defendant, whom SLMPD officers have previously observed to be armed, in addressing a SLMPD Lieutenant, stated words to the effect that if Defendant "catches" the Lieutenant "outside slippin" that the Lieutenant might be too old to protect himself. The Lieutenant, knowing that Defendant

---

[2] The Bicycle Response Unit is trained in large crowd management and civil disobedience, and routinely interacts with protesters.

is routinely armed, inferred Defendant's language as a threat that Defendant would shoot the Lieutenant if given the right opportunity.



This photograph depicts Defendant on or about May 1, 2020, at or near Chestnut and 14th Street. Defendant was present in the vicinity, and upon having contact with an SLMPD Lieutenant made the threatening statements described above. Defendant appears to be armed with a firearm in a shoulder holster.

### IV. CONCLUSION

On balance, the relevant factors strongly support a finding that Defendant is both a flight risk and a danger to the community. The seriousness of the offense, including the boldness with which Defendant encourages shooters, looters, and calls to "off the pigs," combined with his strong animus against law enforcement establishes by clear and convincing evidence that Defendant presents a threat to the community and law enforcement. The Pretrial Services Report establishes the factors that support a flight risk finding by a preponderance of the evidence. The posts contained herein establish that Defendant has recently traveled to Minnesota and likely

engaged in concerted illegal activity.  Moreover, his letters of support demonstrate that he has support within the community, and thus, potential resources to enable his flight.  These factors strengthen the finding that he is a flight risk.

WHEREFORE, the United States requests leave to provide this supplemental information relevant to factors set forth in the Pretrial Services Report, and moves this Court to reconsider its Order denying the Motion for Pretrial Detention.

JEFFREY B. JENSEN
United States Attorney

*s/Michael A. Reilly*
MICHAEL A. REILLY, #43908MO
Assistant United States Attorneys
111 S. 10th Street, 20th Floor
St. Louis, Missouri 63102

## CERTIFICATE OF SERVICE

I certify that on June 11, 2020, a copy of the foregoing was filed with the ECF system for service upon counsel of record.

*/Michael A. Reilly*
MICHAEL A. REILLY, #43908MO